James E. Cecchi
jcecchi@carellabyrne.com
Donald A. Ecklund
decklund@carellabyrne.com
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744

*Attorneys for Plaintiff and the Class*

[Additional attorneys on signature page]

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WILLIAM B. MCGUIRE, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BMW OF NORTH AMERICA, LLC, <br><br> Defendant. | Civil Action No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

## <u>INTRODUCTION</u>

1.      Plaintiff William B. McGuire brings this action for himself and on behalf of all persons in the United States who purchased or leased certain vehicles manufactured, distributed, marketed, and/or sold by BMW of North America, LLC, and/or its related subsidiaries or affiliates ("BMW") with defective navigation systems, as described below (the "Class").

2.      The vehicles at issue in this action (the "Class Vehicles") include all BMW vehicles equipped with a current-generation BMW navigation system containing the "Advanced Real-Time Traffic Information" ("ARTTI") feature (the "Navigation System").

3.      The Navigation System in the Class Vehicles is designed, engineered, manufactured, and installed into the Class Vehicles by BMW.

4.      BMW markets the Navigation System as reliable, accurate, detailed, and quick to update, promising local real-time traffic updated every three minutes and dynamic guidance to automatically re-route the Vehicle around traffic on the Vehicle's intended route.

1133470.5

5.     The Navigation System installed in the Class Vehicles is defective in that it fails to display local real-time traffic information for the area where the Class Vehicle is located, and also fails to automatically re-route the Vehicle to avoid traffic incidents on the Vehicle's intended route (the "Defect").

6.     BMW knew of the Navigation System Defect prior to the sale of the Class Vehicles, and likely as early as June 2012, through sources such as pre-release design, manufacturing, and testing data; in-warranty repair data; early consumer complaints made directly to BMW and/or posted on public online vehicle owner forums; testing done in response to those complaints; and information received from BMW dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery.

7.     Despite knowing of the Defect, BMW misrepresented the Navigation System to have qualities it did not have (i.e., local real-time traffic information and automatic re-routing around traffic), and failed to disclose and actively concealed the Defect from Plaintiff and Class members when they purchased their Class Vehicles.

1133470.5

8.     BMW also made misrepresentations about the Navigation System and failed to disclose, and actively concealed the Navigation System Defect when Plaintiff and Class members brought their Class Vehicles in for warranty service as a result of the Defect.

9.     And when, after experiencing Defect-related Navigation System failure, Plaintiff and Class members brought their Vehicles to authorized BMW service centers for repair under warranty, BMW failed to repair the Vehicles or remedy the Defect.

10.     As a result of BMW's knowing misrepresentations and omissions about the Navigation System, BMW's active concealment of the Defect, and BMW's failure to repair the Class Vehicles under warranty, Plaintiff and Class members have paid for a material feature that they did not receive, i.e., a Navigation System that displays up-to-date local real-time traffic and automatically re-routes the Vehicle around traffic on its intended route.

11.     BMW's misconduct has imposed significant costs on Plaintiff and Class members, not the least of which are the substantial expenses incurred by Plaintiff and Class members for a BMW Navigation System

1133470.5

that is failure-prone and does not work as promised and reasonably expected, in violation of BMW's Warranty and applicable law.

12.    Thus Plaintiff brings this action to remedy BMW's violations of federal and state consumer protection and warranty statutes in connection with BMW's misconduct, including its concealment of material facts concerning the design, manufacture, reliability, performance, geographic coverage, and propensity for failure and malfunction of the Class Vehicles' Navigation System, during the distribution, marketing, sale, advertisement, repair, and/or servicing of the Class Vehicles and their Navigation Systems.

13.    Individually and on behalf of the Class, Plaintiff asserts claims against BMW for violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.*, and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; for breach of express and implied warranties and unjust enrichment under New Jersey law; and/or for violations of similar consumer protection and warranty laws of the states where Class members purchased or leased their Class Vehicles.

1133470.5

14.     Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorney's fees, costs, and all other relief available to Plaintiff and the Class.

## THE PARTIES

### Plaintiff William B. McGuire

15.     Plaintiff William B. McGuire is, and at all times relevant to this action has been, a resident of New Vernon, New Jersey.

16.     On December 29, 2012, McGuire purchased a new 2013 BMW 750Li xDrive, Vehicle Identification No. WBAYF8C58DD140302, from BMW of Morristown, an authorized BMW dealership located in Morristown, New Jersey.

17.     McGuire's Vehicle came equipped with the ARTTI-enabled Navigation System, the $2,800 cost of which was included in the purchase price of McGuire's Vehicle.

18.     In purchasing his Vehicle, McGuire wanted a vehicle with a reliable and accurate navigation system that would provide up-to-date, real-time traffic information for his local area, i.e. northern New Jersey, and would re-route him to avoid traffic on his intended route.

1133470.5

19.     The Vehicle's real-time traffic feature was critically important to McGuire because the area where he most often drives – northern New Jersey – often experiences heavy traffic and roadwork incidents that he must be aware of to avoid delays when traveling to meet clients or to appear in court. For this reason, the Class Vehicles' Navigation System's ARTTI feature – which McGuire reasonably believed would reliably and accurately show traffic for his local area in northern New Jersey – was a key dispositive factor in McGuire's decision to purchase his Class Vehicle.

20.     Because McGuire had had a positive experience with an earlier version of the real-time traffic information feature in the navigation system on his previous BMW vehicle, McGuire specifically and reasonably expected that the ARTTI traffic feature of the Navigation System in his Class Vehicle would be at least as good, if not better, than the traffic feature in the navigation system in his older model-year BMW.

21.     At no point before or during McGuire's purchase of his Class Vehicle did BMW or any representative of BMW disclose to McGuire the existence or nature of the Defect, or that his Vehicle's Navigation

System would fail to provide local real-time traffic information for his area or would fail to re-route him to avoid traffic on his intended route.

22.    McGuire's new Vehicle was delivered on or about January 2, 2013. At all times since then, McGuire has operated his Class Vehicle and its Navigation System in a manner consistent with their intended use.

23.    Nevertheless, McGuire has experienced persistent and as-yet-unresolved problems with his Navigation System, including, but not limited to, failure of the Navigation System to provide any local real-time traffic information for the area of northern New Jersey where McGuire lives and works, and failure of the Navigation System to automatically re-route his Vehicle to avoid traffic on his intended route.

24.    Soon after purchasing his Class Vehicle, McGuire noticed that its Navigation System was failing to provide any local real-time traffic information for his area in northern New Jersey – the closest traffic information shown by the Navigation System was over 30 miles away in New York City.

25.    In or around April 2013, McGuire took his Vehicle back to BMW of Morristown to complain about the Navigation System's failure

to provide real-time traffic information and to ask that BMW repair or replace his defective Navigation System. McGuire made this complaint and request to the salesperson that had sold McGuire his Class Vehicle.

26.    During that visit, the salesperson and a service manager observed McGuire's Vehicle's Navigation System's failure to provide real-time traffic information, and then inspected several other Class Vehicles on their lot and reported to McGuire that the other Vehicles were exhibiting the same failure to provide real-time traffic information for the local area as was McGuire's vehicle. The two then told McGuire they would "look into it" and also suggested that McGuire contact "BMW Corporate".

27.    An email to CustomerRelations@bmwusa.com about McGuire's Vehicle's Navigation System failure resulted in McGuire's "case" being assigned to Bill Tavenger in BMW's Customer Relations and Services Department.

28.    In or about April 2013, McGuire called Bill Tavenger at 1-800-831-1117, extension 7305, which was the contact information McGuire had received via email from BMW's Customer Relations and Services Department. On this call, McGuire reported his Navigation

System's failure and that he had brought his vehicle to BMW of Morristown for warranty service, and that the personnel there observed the Navigation System failure and had told McGuire they were "looking into it" and had suggested that McGuire contact "BMW Corporate." During this conversation, McGuire again requested that BMW repair or replace his defective Navigation System.

29.    In or about early May 2013, a BMW "regional engineer" came to out to inspect McGuire's Vehicle. After inspecting McGuire's Class Vehicle, the BMW regional engineer told McGuire "it is what it is . . . this [the Navigation System] is functioning within our parameters and specifications" and did not suggest that any remedy or relief would be forthcoming.

30.    On May 17, 2013, McGuire received a voicemail message from Bill Tavenger of the BMW North America Customer Relations Department. Bill stated that "the regional engineer did inspect the vehicle, found the vehicle to be operating normally and as designed." Tavenger advised McGuire that local real-time traffic information should appear if McGuire entered a destination into the Navigation System's route guidance system. McGuire has tested this but found that

1133470.5

the Navigation System fails to show local real-time traffic information for his area in northern New Jersey regardless of whether route guidance is in use.

31.    McGuire's problems with his Navigation System have been neither limited nor occasional – his Navigation System has failed to provide local real-time traffic for his area or automatically route him around traffic for the entire time he has owned his Vehicle.

32.    McGuire has continuously seen advertisements for BMW vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Class Vehicle in 2012. Although he does not recall the specifics of the many BMW advertisements and statements he saw, heard, or read before he purchased his Class Vehicle, he does recall that the quality and performance of the Vehicles was a frequent theme across them.

33.    Had those advertisements, statements, or any other BMW materials or communications informed McGuire of the Navigation System Defect, the Navigation System's propensity to fail and malfunction as a result of the Defect, the lack of any fix, as well as

10

BMW's refusal (or inability) to remedy the problem, McGuire would not have purchased his Class Vehicle.

## Defendant BMW of North America, LLC

34.    Defendant BMW of North America, LLC, is a Delaware corporation with its principal place of business and North American headquarters in Woodcliff Lake, New Jersey.

35.    BMW also maintains corporate offices and a training center in Montvale, New Jersey; a parts distribution center in Mount Olive, New Jersey; and a Vehicle Preparation Center in Port Jersey, New Jersey. Thus BMW does business throughout New Jersey, including throughout this judicial district.

36.    At all times relevant herein, BMW was engaged in the business of designing, manufacturing, distributing, marketing, warranting, selling, leasing, and servicing motor vehicles, including the Class Vehicles, throughout the United States.

37.    BMW makes all of its consumer sales or leases of Class Vehicles through its authorized dealers; thus for the purposes of the sale (or lease) transaction, BMW and the dealer function as an integrated, two-part seller (or lessor).

38.    Upon information and belief, all corporate decisions concerning the Class Vehicles, including the design, manufacture, use, and installation of the Navigation Systems in the Class Vehicles and the misrepresentations and omissions that are the subject of this lawsuit were directed by, or emanated from, BMW representatives working in New Jersey and/or directly reporting to superiors located in New Jersey.

39.    Upon information and belief, BMW's product quality division, customer and dealer relations division, national technical specialists, sales division, marketing division, and after-sales service division, among others, are located in, or supervised by BMW personnel located in, New Jersey.

40.    Furthermore, BMW's Class Vehicle warranty program is created and administered in New Jersey.

## JURISDICTION AND VENUE

41.    Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

42.    This is a class action brought on behalf of a nationwide Class of all purchasers and lessees of the Class Vehicles in the United States;

thus some members of the proposed Class are citizens of states different from BMW's home state.

43.     Upon information and belief, aggregate claims of individual Class members exceed $5,000,000, exclusive of interest and costs.

44.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because BMW is a resident of this judicial district and does business throughout this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims took place within this district.

## APPLICABLE LAW

45.     New Jersey law applies to all claims in this action.

46.     Application of New Jersey law is appropriate because Plaintiff properly brings this Complaint in this district.

47.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

48.     BMW's decision to reside in New Jersey and avail itself of the protection of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

1133470.5

49.     New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure the choice of New Jersey state law is not arbitrary or unfair.

50.     New Jersey has a materially greater interest than any other State in enforcing the rights and remedies granted to consumers under the New Jersey laws invoked in this Complaint. These rights and remedies further strong fundamental public policies of the State of New Jersey.

51.     BMW's United States headquarters and principal place of business is located in New Jersey. BMW also owns property and conducts substantial business in New Jersey and, therefore, New Jersey has an interest in regulating BMW's conduct under its laws.

52.     Upon information and belief, all of BMW's relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in or emanated from New Jersey. For instance, BMW's marketing and engineering efforts relating to the Class Vehicles' Navigation System, as well as its warranty decisions, were undertaken and orchestrated from its headquarters in New Jersey.

14

1133470.5

Thus, New Jersey has the most significant relationship to the claims asserted by Plaintiff and Class members.

53.     In the alternative, the laws of the states where Class members purchased or leased their Class Vehicles apply to those Class members' claims in this action.

## FACTUAL ALLEGATIONS

54.     This class action is brought on behalf of all persons who bought or leased a Class Vehicle in the United States.

55.     The Class Vehicles at issue in this action include all BMW vehicles equipped with a Navigation System containing the ARRTI feature.

**The Class  Vehicles '  Navigation System is Defective.**

56.     The Class Vehicles are equipped with a Navigation System designed, manufactured, and installed in the Class Vehicles by BMW.

57.     The Class Vehicles' Navigation System includes the ARTTI feature, which purportedly "uses a cellular data connection via the telematics device embedded in the vehicle" to deliver real-time traffic information for the area the Vehicle is located in. According to BMW, the "ARTTI is updated every 3 minutes to ensure that you always get

the latest traffic information and, when the navigation's dynamic guidance feature is turned on, the system will automatically re-route around traffic jams."

58.     BMW represents that local real-time traffic information is available 24 hours a day, 7 days a week in the "NY/NJ/CT-Metro Area", which, according to BMW's coverage map, includes the areas of northern New Jersey where Plaintiff McGuire drives his Vehicle.

59.     For some Class Vehicles, the Navigation System is an optional feature, offered by BMW for installation in those model Class Vehicles prior to the sale of the Vehicle, and, if selected, paid for by the purchaser or lessee of the Vehicle at an additional cost of $2,800.

60.     For other Class Vehicles, BMW includes the Navigation System as a standard feature, and therefore BMW includes the price of the Navigation System in the total price of those Vehicles.

61.     Despite its substantial cost, the Navigation System in the Class Vehicles is defective in that it fails to display local real-time traffic information for the area where the Vehicle is located, and also fails to re-route the Vehicle to avoid traffic incidents on the Vehicle's intended route.

16

62.     Preliminary expert inspection of Plaintiff's Class Vehicle as well as other Class Vehicles available for sale by BMW confirmed that the Navigation System in those Vehicles failed to display local real-time traffic information for the area where the Vehicle was located, and also failed to re-route the Vehicle around upcoming traffic when using the route guidance feature.

## BMW Knew of the Navigation System Defect.

63.     On information and belief, BMW became aware of the Navigation System Defect at least as early as June 2012, before Plaintiff and Class members purchased or leased their Class Vehicles, and certainly well before Plaintiff and Class members brought their Vehicles to BMW for warranty repair of their Vehicles' Navigation System failures.

64.     BMW knew of the Defect through sources such as pre-release design, manufacturing, and testing data; in-warranty repair data; early consumer complaints made directly to BMW and/or posted on public online vehicle owner forums; testing done in response to those complaints; information received from BMW dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery.

17

65.    Preliminary expert analysis made without the benefit of discovery indicates that, in or around June 2012, BMW changed the design of the navigation system for some of its forthcoming 2013 models, announcing that the navigation systems in certain 2013 3-Series, 5-Series, and 7-Series vehicles would feature ARTTI instead of the traffic feature provided by the navigation systems in prior BMW models.

66.    Those 2013 BMW models with the ARTTI-enabled Navigation System, including the Class Vehicles, first became available for purchase or lease by the public in or around July 2012.

67.    During the decision-making process of switching from the predecessor navigation system traffic feature to ARTTI, BMW necessarily would have gained comprehensive and exclusive knowledge about the design, functionality, performance, reliability, accuracy, updating speed, and geographic coverage of the Class Vehicles' Navigation System and its ARTTI function. This pre-release Navigation System design, engineering, manufacture, and testing data is in BMW's exclusive possession and is unavailable to Plaintiff without discovery; but, upon information and belief, an adequate pre-release analysis of

the design, engineering, manufacture, and performance of the Navigation System used in the Class Vehicles would have revealed to BMW that it was defective and would fail and/or malfunction.

68.     BMW's knowledge of the defective BMW Navigation System before and after the Vehicles' release into the market, and the absence of any fix for it, is certain given the close attention it pays to the development, production, and quality of its Vehicles. According to BMW:

> Making sure that the right numbers of the right parts are in the right place at the right time - and that these parts meet the required quality standards - is only one of many central tasks mastered daily by BMW logistics specialists. They also oversee product and process targets to make sure these are efficiently achieved.[1]
>
> *   *   *
>
> The tradition of quality at the BMW Group permeates all work processes of the worldwide production network. A comprehensive, multi-level quality management system ensures quality in all work processes as well as components and materials, and ultimately - products. But above all, the BMW Group orients its quality management system to the needs of its customers.

_____

[1] *See* http://www.bmwgroup.com/bmwgroup_prod/e/0_0_www_bmwgroup_com/ produktion/fahrzeugfertigung/automobilfertigung/logistik.html.

1133470.5

One foundation of "Made by BMW Group" is our employees. "Customer-oriented thought and action" is part of corporation philosophy and anchors our goal of achieving perfect results in all manufacturing areas. Our employees' attitude to quality from the very beginning, continuing along the entire process chain, prevents mistakes and ensures continual improvement.[2]

\* \* \*

The guiding principle of series development is the fast implementation of the overall vehicle concept agreed upon during the concept stage. To this end, developed components together with all functional, geometrical and system-related features are incorporated into the entire vehicle, tested, assessed and verified, as only an interplay of form, function and electronic systems within the overall vehicle architecture can create a total vehicle experience that will convince the customer. Last but not least, the success of this principle is dependent on interdisciplinary and networked forms of cooperation between all corporate departments.

In addition to other features, bodywork, interior, driving dynamics, engines as well as electrical and electronic systems form the backbone of development. Specialists from all of these areas provide their expertise in order to achieve a first-class vehicle concept.[3]

---

[2] *See* http://www.bmwgroup.com/bmwgroup_prod/e/0_0_www_bmwgroup_com/ produktion/fahrzeugfertigung/intelligente_prozesse/qualitaetsmanagement.html.
[3] *See* http://www.bmwgroup.com/bmwgroup_prod/e/0_0_www_bmwgroup_com/ forschung_entwicklung/ein_blicke_in_die_entwicklung/portal_zukunft/BMWGroupP ortalZukunft.html.

69.     Further, upon information and belief and preliminary investigation, BMW knew of the Defect because the Class Vehicles' Navigation Systems experienced failure and/or malfunction prior to their sale or lease, while the Vehicles were still on the lot for sale at the dealership.

70.     BMW also knew or should have known about the Navigation System Defect from its service centers' reports of Class Vehicles brought in for warranty repairs of Navigation Systems that failed or malfunctioned due to the Defect.

71.     Upon information and belief, BMW collects, reviews, and analyzes detailed information about service done under warranty at its dealerships and service centers, including the type and frequency of such in-warranty service. BMW dictates that when service is done under warranty, BMW service centers must provide detailed documentation of the problem and the fix, in case BMW later decides to audit the service center or otherwise verify the warranty coverage. For their part, BMW service centers are meticulous about providing this detailed information about in-warranty service to BMW, because BMW

1133470.5

will not pay the service centers for the service if they do not provide sufficient detail about the problem, cause, and resolution.

72.    BMW also knew or should have known about the Navigation System Defect from consumer complaints regarding failures or malfunctions of the Navigation System that were made directly to BMW. The full universe of complaints made directly to BMW about the Navigation System Defect is in the exclusive custody and control of BMW and is unavailable to Plaintiff prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to BMW and BMW dealerships about the Navigation System failures their Class Vehicles experienced due to the Defect.

73.    Prior to discovery, BMW necessarily has exclusive knowledge about the above-mentioned sources of BMW's knowledge of the Defect. However, taken together, Plaintiff's allegations construct a factual context in which BMW's prior knowledge of the Defect from multiple sources is plausible.

## BMW's Marketing and Concealment of the Defect

74.    Despite its knowledge of the Defect, BMW designed, engineered, manufactured, programmed, installed, marketed, and sold

the Navigation System in the Class Vehicles, while actively concealing and failing to disclose to Plaintiff and Class members the material facts of the Navigation System Defect, the Navigation System's propensity to fail and/or malfunction, and the absence of any fix.

75.     BMW directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, and in print publications, mailings, and through other mass media.

76.     BMW's marketing material states that the Class Vehicles' Navigation System's ARTTI feature "displays and describes current local traffic information on your Control Display; in case of delays greater than five minutes, it suggests alternate routes." ARTTI "updates give you reliable bulletins on congestion, accidents, and even weather."

77.     BMW's marketing material also states that, "with ARTTI, you get the information faster, with more detail, and with greater coverage than ever before offered in a BMW vehicle." This is "because ARTTI uses a cellular data connection via the telematics device embedded in the vehicle, ARTTI is delivered to the vehicle quickly and

can be updated more frequently than past traffic information systems."
This is because ARTTI data "comes through the vehicle's own network
connection."

78.   BMW represents that "ARTTI is updated every 3 minutes to
ensure that you always get the latest traffic information…"

79.   BMW also touts the geographic coverage of ARTTI, stating
that ARTTI "extends beyond major highways and thoroughfares to
cover country roads and even a large number of urban routes as well."

80.   BMW's marketing makes no mention of the Navigation
System Defect, the Navigation System's propensity to fail to show local
real-time traffic information, or that there is no fix for this problem.

81.   Plaintiff and Class members were exposed to BMW's
national, multimedia marketing campaign promoting the reliability,
quickness, accuracy, and broad coverage of the traffic information
provided by the Class Vehicles' Navigation System, and Plaintiff and
Class members justifiably made their decisions to purchase or lease
their Class Vehicles and/or to purchase the Navigation System based on
BMW's misleading representations that concealed the true, defective
nature of the Navigation System.

82.    The Navigation System's propensity to fail and malfunction, and the absence of any fix, are material facts to a reasonable consumer who is deciding whether or not to purchase a Class Vehicle equipped with the Navigation System. BMW should have disclosed these material facts to the public, but failed to do so.

83.    At all relevant times, BMW had exclusive possession of the information regarding the Navigation System Defect through BMW's own testing, industry testing, and consumer and dealer complaints it received, among other sources, as described above. BMW also exclusively knew that it did not have any fix for the Navigation System Defect. These facts were material to Plaintiff and Class members, and BMW had a duty to disclose these facts to Plaintiff and the Class, but failed to do so.

84.    Had BMW disclosed the material information regarding the Navigation System Defect, and the absence of any fix for it, Plaintiff and Class members would not have purchased a Class Vehicle or the Navigation System.

85.    In sum, despite its knowledge of the existence and pervasiveness of the Navigation System Defect, BMW has actively

concealed the existence and nature of the Defect from Plaintiff and

Class members since at least June 2012, and certainly since well before

Plaintiff and Class members purchased or leased their Class Vehicles.

Specifically, BMW has:

      a.    Failed to disclose, at and after the time of purchase,

lease, and/or warranty service, any and all known material defects of

the Class Vehicles, including the Navigation System Defect;

      b.    Failed to disclose, at and after the time of purchase,

lease, and/or warranty service, that the Class Vehicles' Navigation

System was defective and not fit for its intended purposes;

      c.    Failed to disclose, and actively concealed, the fact that

the Class Vehicles' Navigation System was defective, despite the fact

that BMW learned of the Navigation System Defect as early as June

2012, and certainly well before Plaintiff and Class members purchased

or leased their Class Vehicles, through sources such as pre-release

design, manufacturing, and testing data; in-warranty repair data; early

consumer complaints made directly to BMW and/or posted on public

online vehicle owner forums; testing done in response to those

complaints; and information received from BMW dealers; as well as

through other internal sources unavailable to Plaintiff prior to discovery; and

       d.    Failed to disclose, and actively concealed, the existence and pervasiveness of the Navigation System Defect even when directly asked about it by Plaintiff and Class members during communications with BMW, BMW Customer Relations, BMW dealerships, and/or BMW service centers.

86.    By engaging in the conduct described above, BMW has concealed, and continues to conceal, the Navigation System Defect from Plaintiff and Class members. If Plaintiff and Class members had had knowledge of the information BMW concealed, they would have factored the existence of the Navigation System Defect into their decision to purchase/lease (or not to purchase/lease) the Class Vehicles or the Navigation System.

**Fraudulent Concealment Allegations**

87.    Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at BMW responsible for disseminating

false and misleading marketing materials regarding the Class Vehicles. BMW necessarily is in exclusive possession of all of this information.

88.    Plaintiff's claims arise out of BMW's fraudulent concealment of the Navigation System Defect and the Navigation System failure and/or malfunction the Defect causes, and BMW's representations about the reliability, accuracy, quickness, and geographic coverage of the Class Vehicles' Navigation System. To the extent that Plaintiff's claims arise from BMW's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.

89.    Plaintiff alleges that at all relevant times, including specifically at the time he purchased his Class Vehicle, BMW knew, or was reckless in not knowing, of the Navigation System Defect; BMW was under a duty to disclose the Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it; and BMW never disclosed the Defect to Plaintiff or the public at any time or place or in any manner.

90.    Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information exclusively in BMW's possession:

a.    *Who*:  BMW actively concealed the Navigation System Defect from Plaintiff and the Class while simultaneously touting the reliability, accuracy, quickness, and geographic coverage of the Class Vehicles' Navigation System, as alleged in paragraphs 74-87, above. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at BMW responsible for the decisions to conceal the Defect from the public; this information about internal BMW affairs is necessarily information in BMW's exclusive possession and unavailable to Plaintiff at this stage.

b.    *What*:  BMW knew that the Class Vehicles contain the Navigation System Defect, as alleged above in paragraphs 63-73. BMW concealed the Defect and made representations about the reliability, accuracy, quickness, and geographic coverage of the Class Vehicles' Navigation System, as specified above in paragraphs 74-87. This active concealment was done intentionally by BMW with the intent that the public be deceived.

c. **When**:  BMW concealed material information regarding the Defect at all times and made representations about the reliability, accuracy, quickness, and geographic coverage of the Class Vehicles' Navigation System, starting no later than June 2012, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 63-86. At no point before or during Plaintiff's purchase of his Class Vehicle did BMW or any representative of BMW disclose to Plaintiff the existence or nature of the Defect, or that his Vehicle's Navigation System would fail to provide local real-time traffic information for his area or would fail to re-route him to avoid traffic on his intended route. BMW has not disclosed the truth about the Defect in the Class Vehicles to anyone outside of BMW. BMW has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles.

d. **Where**:  BMW concealed material information regarding the true nature of the Defect in every communication it had with Plaintiff and the Class and made representations about the reliability, accuracy, quickness, and geographic coverage of the Class

Vehicles' Navigation System. Plaintiff is aware of no document, communication, or other place or thing, in which BMW disclosed the truth about the Defect in the Class Vehicles to anyone outside of BMW. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on BMW's website.

e. **_How_**: BMW knew of the Defect through pre-release design, manufacturing, and testing data; in-warranty repair data; early consumer complaints made directly to BMW and/or posted on public online vehicle owner forums; testing done in response to those complaints; and information received from BMW dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery, as described above in paragraphs 63-73. BMW concealed the Navigation System Defect from Plaintiff and the Class and made representations about the reliability, accuracy, quickness, and geographic coverage of the Class Vehicles' Navigation System. BMW actively concealed the truth about the existence and nature of the Defect from Plaintiff and Class members at all times, even though it knew about the Defect and knew that information about the Defect

31

would be material to a reasonable consumer. BMW promised in its marketing materials that the Class Vehicles' Navigation System had qualities that it does not have.

f.      **Why:**  BMW actively concealed material information about the Navigation System Defect for the purpose of deceiving and inducing Plaintiff and Class members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles. Had BMW disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff (and other reasonable consumers) would have been aware of it, and would not have bought the Class Vehicles or would have paid less for them.

## BMW Breached its Warranty By Failing to Remedy the Defect.

91.    BMW makes all of its consumer sales or leases of Class Vehicles through its authorized dealers; thus for the purposes of the sale (or lease) transaction, BMW and the dealer function as an integrated, two-part seller (or lessor).

92.    BMW provided Plaintiff and Class members with a four-year/50,000-mile "New Vehicle Limited Warranty" (the "Warranty"). The Warranty is part of the "BMW Ultimate Service," which BMW touts

as "lead[ing] the industry in providing owners with incredible value and peace of mind."

93.    Each Class Vehicle sale is accompanied by this standard express Warranty, which was developed by BMW and identifies BMW as the warrantor.

94.    The relevant Warranty terms are the same for all of the Class Vehicles.

95.    Servicing under the Warranty or Maintenance Program occurs at the authorized service center (i.e., the dealer).

96.    The Warranty explicitly states it runs to the first retail purchaser and subsequent purchasers.

97.    The Warranty states that, "[t]o obtain warranty service coverage, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW center in the United States or Puerto Rico, during normal business hours. The BMW center will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts."

98.     Plaintiff and Class members reasonably expected that the Navigation System in their Class Vehicles would function properly and as BMW represented during the life of the Vehicle, including during the Warranty period. Further, Plaintiff and the Class members reasonably expected that, in the event of Navigation System failure and/or malfunction, BMW would fix and/or replace (and, at the very least, have the ability to fix and/or replace) the Navigation System pursuant to the terms of the Warranty.

99.     Prior to and during the course of marketing and selling the Class Vehicles to Plaintiff and Class members, however, BMW knew that the Navigation System was defective and subject to failure and malfunction based upon pre-release design, manufacturing, and testing data; in-warranty repair data; early consumer complaints made directly to BMW and/or posted on public online vehicle owner forums; testing done in response to those complaints; information received from BMW dealers; and other sources, as described in more detail above.

100.   BMW further knew that it had no fix for the Navigation System Defect, and that, to this day, it still has no remedy for the Defect.

101.   BMW's knowledge of the Navigation System Defect, and the lack of any fix for Navigation System failures or malfunctions caused by the Defect, renders the Warranty provided by BMW to Plaintiff and Class members illusory as it relates to the Navigation System. Under all of these circumstances, BMW's provision of the Warranty to Plaintiff and Class members constitutes an unlawful, unfair, and fraudulent business practice and the Warranty is unconscionable.

## CLASS ACTION ALLEGATIONS

102.   Plaintiff brings this class action on behalf of himself and all other similarly situated members of the proposed Class, which is defined as follows:

> All persons in the United States who purchased or leased a BMW vehicle equipped with the Navigation System with the ARTTI feature.

Excluded from the Class are: (1) BMW, any entity or division in which BMW has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class definition

35

if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

103.   This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

**Numerosity/Impracticability of Joinder:**

104.   The members of the Class are so numerous that joinder of all members is impracticable. While appropriate discovery is necessary to learn the actual number of Class members, Plaintiff reasonably estimates that there are thousands of Class members. The exact number of Class members will be readily identifiable from information and records in BMW's possession, custody, or control, as well as from records kept by state Departments of Motor Vehicles.

**Commonality and Predominance:**

105.   There is a well-defined community of interest and common questions of law and fact, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual

circumstances of any Class member, include, but are not limited to, the following:

a.    Whether the Navigation System in the Class Vehicles is defective;

b.    Whether BMW knew that the Navigation System was and is defective;

c.    Whether BMW omitted and/or concealed material facts from Plaintiff and the Class regarding the Defect inherent in the Navigation System;

d.    Whether BMW made false and/or misleading statements about the Navigation System;

e.    Whether BMW's false and/or misleading statements of fact and concealment of material facts concerning the performance and reliability of the Navigation System were likely to deceive the public;

f.    Whether BMW has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the advertising, marketing, and sale of the Navigation System and/or the Class Vehicles;

1133470.5

g.    Whether New Jersey law can be applied to the claims of the Class;

h.    Whether BMW has violated certain state consumer protection statutes;

i.    Whether BMW has breached its uniform written Warranty;

j.    Whether BMW has breached the implied warranty of merchantability;

k.    Whether BMW has been unjustly enriched by its misconduct;

l.    Whether Plaintiff and the Class have suffered damages as a result of BMW's wrongful conduct, and if so, the appropriate amount thereof; and

m.    Whether Plaintiff and the Class are entitled to equitable relief and/or other relief, and if so, the nature of such relief.

**<u>Typicality:</u>**

106.   The representative Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all Class members have suffered the same injuries as a result of BMW's wrongful conduct.

1133470.5

Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

**Adequacy:**

107.   Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

**Superiority:**

108.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. Furthermore, as the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for Class members to individually redress the wrongs done to them. Individual members of the Class do not have a significant interest in individually controlling

1133470.5

the prosecution of separate actions, and individualized litigation presents the potential for inconsistent or contradictory judgments. There will be no difficulty in the management of this class action. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

109.   BMW has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## Notice to Attorney General of Action

110.   A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey, as required by N.J. Stat. Ann. § 56:8-20, upon and at the time of filing of this Complaint.

## COUNT ONE
### Violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

111.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

112.   Plaintiff, other members of the Class, and BMW are "persons" within the meaning of the NJCFA.

1133470.5

113.   Plaintiff and Class members are "consumers" within the meaning of the NJCFA.

114.   At all relevant times material hereto, BMW conducted trade and commerce in New Jersey and elsewhere within the meaning of the NJCFA.

115.   The NJCFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

116.   BMW has engaged in deceptive practices in the sale of the defective Navigation System in the Class Vehicles, including: (1) selling the Navigation System despite knowing it would fail and/or malfunction and that BMW was unable or unwilling to remedy the failure; and (2) failing to disclose and/or concealing this known Defect.

117.   BMW knew of the Navigation System Defect prior to the sale of the Class Vehicles, and likely as early as June 2012, through sources such as pre-release design, manufacturing, and testing data; in-warranty repair data; early consumer complaints made directly to BMW and/or posted on public online vehicle owner forums; testing done in response to those complaints; information received from BMW

1133470.5

dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery.

118.   BMW knowingly omitted and failed to disclose material facts to Plaintiff and Class members with respect to the Defect, including the fact that, with normal use, the Navigation System would fail and/or malfunction by failing to display local real-traffic information for the area where the Vehicle is located, and also failing to re-route the Vehicle to avoid traffic incidents on the Vehicle's intended route.

119.   BMW intended to deceive Plaintiff and Class members and intended that Plaintiff and Class members rely on BMW's misrepresentation, omissions, and acts of concealment, so that Plaintiff and Class members would purchase the Navigation System and/or Class Vehicles at a substantial out-of-pocket cost to them.

120.   BMW had a duty to disclose the Navigation System Defect to Plaintiff and the Class.

121.   Had BMW disclosed all material information regarding the Navigation System to Plaintiff and Class members, they would not have purchased the Navigation System and/or their Class Vehicles.

1133470.5

122.   The foregoing acts, omissions, and practices directly, foreseeably, and proximately caused Plaintiff and Class members to suffer ascertainable losses in the form of money spent to purchase the Navigation System and/or their Class Vehicles, as well as diminution in the value of their Class Vehicles as a result of having a defective Navigation System, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorney's fees, and costs of suit.

### COUNT TWO
### Violation of Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301-2312 (Written Warranty)

123.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

124.   The Navigation System and the Class Vehicles are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

125.   Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C.§ 2301(3).

126.  BMW is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

1133470.5

127.   BMW provided Plaintiff and Class members with the Warranty, which constitutes "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

128.   The written Warranties BMW provided to Plaintiff and all Class members were identical in all material respects.

129.   BMW warranted the Class Vehicles' Navigation System against defects in materials or workmanship at a time when it knew that the Navigation System was and is defective and, nevertheless, continued to market and sell the Navigation System in the Class Vehicles with this express written Warranty.

130.   BMW is obligated under the terms of its written Warranty to repair and/or replace the defective Navigation System sold to Plaintiff and the Class.

131.   BMW has breached its written Warranty by supplying the Navigation System in a condition that does not meet the Warranty obligations undertaken by BMW, and by failing to remedy the Defect and/or repair or replace the defective Navigation Systems.

132.   As set forth above, BMW's Warranty fails in its essential purpose and, accordingly, Plaintiff and Class members cannot and

1133470.5

should not be limited to the remedies set forth in BMW's written Warranty and, instead, should be permitted to recover other appropriate relief, including damages and injunctive relief.

133.   BMW has received sufficient and timely notice of the breaches of Warranty alleged herein. On September 26, 2013, Plaintiff provided written notice to BMW of the claims made in this Complaint, including BMW's MMWA violations. Despite this notice and BMW's own prior knowledge of the Navigation System Defect, BMW has failed and still refuses to honor its Warranty and remedy the Defect and/or repair or replace the defective Navigation System in the Class Vehicles.

134.   Plaintiff has given BMW a reasonable opportunity to cure its failures with respect to its Warranty, and BMW has failed to do so.

135.   BMW has failed to provide to Plaintiff or Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that BMW expressly warranted when it sold the Navigation System in the Class Vehicles to Plaintiff and Class members.

136.   Despite repeated demands made by Plaintiff and Class members to BMW and the authorized BMW centers to which warranty

claims must be submitted under the terms of the written Warranty, BMW has failed and refused to remedy the Defect and/or repair or replace the defective Navigation Systems in accordance with the terms of its written Warranty.

137.   In its capacity as a warrantor, and by the conduct described herein, any attempt by BMW to limit or disclaim the express warranties in a manner that would exclude coverage of the defective Navigation Systems is unconscionable as a matter of law because the purchase/lease transaction was tainted by the BMW's concealment of material facts. Thus any such effort by BMW to disclaim, or otherwise limit, its liability for the defective Navigation Systems is null and void.

138.   The regulations of the Federal Trade Commission specifically provide as follows with respect to a product that is warranted: "A seller or manufacturer should advertise that a product is warranted or guaranteed only if the seller or manufacturer, as the case may be, ***promptly and fully performs its obligations under the warranty or guarantee***." 16 C.F.R. § 239.5 (emphasis added).

139.   Here, by warranting or guaranteeing a product for which it was unable (or unwilling) to promptly and fully perform its obligations

1133470.5

under the Warranty, BMW engaged in false, deceptive, and misleading advertising, marketing and representations, in violation of the FTC's regulations and guidance.

140.   By BMW's conduct as described herein, including BMW's knowledge of the Navigation System Defect and its actions and inaction in light of that knowledge, BMW has failed to comply with its obligations under its written promises, warranties, and representations.

141.   As a result of BMW's breach of express written warranties, Plaintiff and Class members are entitled to revoke their acceptance of the Navigation System and/or the Class Vehicles, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## COUNT THREE
### Violation of Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301-2312 (Implied Warranty)

142.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

143.   The Class Vehicles and their Navigation Systems are "consumer products" as defined by 15 U.S.C. § 2301(1).

1133470.5

144.   At all relevant times, Plaintiff and Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

145.   At all relevant times, BMW is a "supplier" as defined by 15 U.S.C. § 2301(4).

146.   At all relevant times, BMW is a "warrantor" as defined by 15 U.S.C. § 2301(5).

147.   BMW provided Plaintiff and Class members with "implied warranties" as defined by 15 U.S.C. § 2301(7).

148.   BMW's implied warranty of merchantability accompanied the sale of the Navigation Systems and Class Vehicles to Plaintiff and Class members.

149.   BMW is a merchant with respect to the sale of the Navigation Systems and the Class Vehicles.

150.   BMW provided Plaintiff and Class members with an implied warranty that the Navigation Systems and Class Vehicles were merchantable and fit for the ordinary purposes for which they were sold.

151.   The Class Vehicles' Navigation System is not fit for its ordinary purpose because the Navigation System is defective in that it

1133470.5

fails to display local real-time traffic information and fails to re-route the Vehicle to avoid traffic, and there is currently no fix for the Navigation System Defect.

152.   The alleged Defect is so basic that it renders the Navigation System unfit for the ordinary purpose for which it is sold and used.

153.   BMW knew, or had reason to know, that Plaintiff and Class members purchased the Navigation System in their Class Vehicles to obtain reliable, accurate, detailed, and quick-to-update Navigation System performance while operating their Vehicles.

154.   The Class Vehicles' Navigation System does not conform to the promises and affirmations uniformly issued by BMW in its sales materials and warranties, and is not of fair or average quality.

155.   Plaintiff and the Class members have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of BMW or by operation of law in light of BMW's unconscionable conduct.

156.   In its capacity as a supplier and warrantor, and by the conduct described herein, any attempt by BMW to limit its implied warranty in a manner that would exclude coverage of the defective

Navigation System is unconscionable as a matter of law because the purchase/lease transaction was tainted by the BMW's concealment of material facts. Thus any such effort by BMW to disclaim, or otherwise limit, its liability for the defective Navigation Systems is null and void and in violation of 15 U.S.C. § 2308.

157.   On September 26, 2013, Plaintiff provided written notice to BMW of the claims made in this Complaint, including BMW's MMWA violations. Plaintiff has provided sufficient and timely notice to BMW regarding the problems he has experienced with his Class Vehicle's Navigation System, and he has given BMW a reasonable opportunity to cure its failures with respect to its warranties; notwithstanding such notice and reasonable opportunity for cure, BMW has failed to cure the Navigation System Defect.

158.   Any obligation by Plaintiff to provide BMW with further opportunity to cure the defect is extinguished by operation of law as a result of BMW's misconduct as described herein.

159.   Plaintiff and the Class members have been damaged as a direct and proximate result of BMW's breach of the implied warranty of merchantability.

160.   As a result of BMW's breach of implied warranty, Plaintiff and Class members are entitled to revoke their acceptance of the Navigation System and/or their Class Vehicles, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## COUNT FOUR
## Breach of Express or Written Warranty

161.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

162.   Plaintiff seeks to recover for BMW's breach of express Warranty under the laws of the State of New Jersey, or, alternatively, under the laws of the states in which Class members purchased or leased their Class Vehicles.

163.  BMW warranted the Class Vehicles' Navigation System against defects in materials or workmanship at a time when it knew that the Navigation System was defective and, nevertheless, continued to market and sell the Navigation System with this express written Warranty.

164.   BMW is obligated, under the terms of its express Warranty, to repair and/or replace the defective Navigation System sold to Plaintiff and the Class.

165.   BMW has breached its express Warranty, as set forth above, by supplying the Navigation System in a condition that does not meet the warranty obligations undertaken by BMW and by failing to remedy the Defect and/or repair or replace the defective Navigation Systems.

166.   BMW has received sufficient and timely notice of the breaches of Warranty alleged herein. On September 26, 2013, Plaintiff provided written notice to BMW of the claims made in this Complaint, including BMW's Warranty breaches. Despite this notice and BMW's own prior knowledge of the Navigation System Defect, BMW has failed and still refuses to honor its Warranty and remedy the Defect and/or repair or replace the defective Navigation System in the Class Vehicles.

167.   Plaintiff has given BMW a reasonable opportunity to cure its failures with respect to its warranties, and BMW has failed to do so.

168.   BMW has failed to provide to Plaintiff or Class members, as a warranty replacement, a product that conforms to the qualities and

characteristics that BMW expressly warranted when it sold the Navigation System in Class Vehicles to Plaintiff and Class members.

169.  The Defect has substantially impaired the value of the Navigation System.

170.  As a result of BMW's breach of warranty, Plaintiff and Class members have suffered damages, in an amount to be determined at trial.

171.  In its capacity as a warrantor, and by the conduct described herein, any attempt by BMW to limit or disclaim the express warranties in a manner that would exclude coverage of the defective Navigation Systems is unconscionable as a matter of law because the purchase/lease transaction was tainted by the BMW's concealment of material facts. Thus any such effort by BMW to disclaim, or otherwise limit, its liability for the defective Navigation Systems is null and void.

## COUNT FIVE
### Breach of Implied Warranty of Merchantability

172.  Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

173.  Plaintiff seeks to recover for BMW's breach of the implied warranty of merchantability under the laws of the State of New Jersey,

1133470.5

or, alternatively, under the laws of the states in which Class members purchased or leased their Class Vehicles.

174.   An implied warranty of merchantability accompanied BMW's sale of the Navigation System in Class Vehicles to Plaintiff and Class members.

175.   BMW, by implication, warranted that the Navigation System was not inherently defective and that the Navigation System was merchantable and fit for the ordinary purposes for which it was sold.

176.   But the Class Vehicles' Navigation System is not fit for its ordinary purpose because the Navigation System is defective in that it fails to display local real-time traffic information and fails to re-route the Vehicle to avoid traffic, and BMW currently has no fix for the Navigation System Defect.

177.   The alleged Defect is so basic that it renders the Navigation System unfit for the ordinary purpose for which it is sold and used.

178.   Through the conduct described herein, BMW has breached its implied warranty of merchantability and is liable to Plaintiff and Class members.

179.   Plaintiff and Class members have sustained damages as a result of BMW's breach, in an amount to be determined at trial.

180.   Plaintiff has provided timely notice to BMW regarding the problems he experienced with his Class Vehicle's Navigation System and, notwithstanding such notice, BMW has failed and refused to offer Plaintiff an effective remedy.

181.   Plaintiff has performed each and every duty required of him under the terms of the warranty, except as may have been excused or prevented by the conduct of BMW, or by operation of law in light of BMW's unconscionable conduct.

182.   Any effort by BMW to disclaim or otherwise limit its responsibility for the defective Navigation System was and is unconscionable under all of the circumstances.

## COUNT SIX
## Unjust Enrichment

183.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

184.   Plaintiff seeks to recover for BMW's unjust enrichment under the laws of the State of New Jersey or, alternatively, under the

1133470.5

laws of the states in which Class members purchased or leased their Class Vehicles.

185.  BMW has been unjustly enriched by the purchases of the Navigation System and/or Class Vehicles by Plaintiff and Class members.

186.  Plaintiff and Class members unknowingly conferred a benefit on BMW of which BMW had knowledge since BMW was aware of the Navigation System Defect, but failed to disclose it and misled Plaintiff and Class members regarding the features and quality of the Navigation System, while profiting from this deception.

187.  The circumstances are such that it would be inequitable, unconscionable, and unjust to permit BMW to retain the benefit of these profits that it unfairly obtained from Plaintiff and Class members.

188.  Plaintiff and Class members, having been damaged by BMW's misconduct, are entitled to recover or recoup damages as a result of the unjust enrichment of BMW to their detriment.

*          *          *

WHEREFORE, Plaintiff and the Class pray for judgment against BMW as follows:

1133470.5

a.      an order certifying the proposed Class and appointing Plaintiff as Class Representative and designating the undersigned counsel of record as Class Counsel;

b.      a declaration that the Navigation System in the Class Vehicles is defective;

c.      a declaration that BMW is financially responsible for notifying all Class members about the defective nature of the Navigation System;

d.      restitution and disgorgement to Plaintiff and the Class of all amounts obtained by BMW as a result of its misconduct;

e.      an award to Plaintiff and Class members of all recoverable compensatory, exemplary, statutory, and other damages, in an amount to be proven at trial;

f.      actual and/or statutory damages for injuries suffered by Plaintiff and the Class in the maximum amount permitted by applicable law;

g.      an order permanently enjoining BMW from engaging in the unlawful practices alleged herein, and requiring BMW to refund to Plaintiff and all Class members the amount they each paid to BMW

57

for the Navigation System installed in their Class Vehicles and/or for the cost of their Class Vehicles, and all costs related thereto;

       h.    an award of pre-judgment and post-judgment interest on any amounts as provided by law;

       i.    an award of reasonable attorney's fees and costs as may be allowable under applicable law;

       j.    leave to amend this Complaint to conform to evidence later revealed through discovery and/or trial; and

       k.    such other and further relief as this Court may deem just and proper, including any extraordinary equitable relief and/or injunctive relief as permitted by law or equity to attach, impound, or otherwise restrict BMW's assets to ensure that Plaintiff and Class members have an effective remedy.

Dated:     December 6, 2013     CARELLA, BYRNE, CECCHI,
                                   OLSTEIN, BRODY & AGNELLO, P.C.

                                   By: /s/ James E. Cecchi
                                      James E. Cecchi

                                   James E. Cecchi
                                   jcecchi@carellabyrne.com
                                   Donald A. Ecklund

decklund@carellabyrne.com
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY
 & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

Jonathan D. Selbin
jselbin@lchb.com
Annika K. Martin
akmartin@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Kristen Law Sagafi
klaw@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

*Attorneys for Plaintiff and the Class*

1133470.5

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.


Dated:        December 6, 2013          CARELLA, BYRNE, CECCHI,
                                        OLSTEIN, BRODY & AGNELLO, P.C.


                                        By: /s/ James E. Cecchi
                                            James E. Cecchi

                                        James E. Cecchi
                                        jcecchi@carellabyrne.com
                                        Donald A. Ecklund
                                        decklund@carellabyrne.com
                                        CARELLA, BYRNE, CECCHI,
                                        OLSTEIN, BRODY
                                          & AGNELLO, P.C.
                                        5 Becker Farm Road
                                        Roseland, NJ 07068
                                        Telephone:  (973) 994-1700
                                        Facsimile:  (973) 994-1744

                                        Jonathan D. Selbin
                                        jselbin@lchb.com
                                        Annika K. Martin
                                        akmartin@lchb.com
                                        LIEFF CABRASER HEIMANN
                                        & BERNSTEIN, LLP
                                        250 Hudson Street, 8th Floor
                                        New York, NY  10013-1413
                                        Telephone:  212.355.9500
                                        Facsimile:  212.355.9592

                                        Kristen Law Sagafi
                                        klaw@lchb.com
                                        LIEFF CABRASER HEIMANN

60

& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

*Attorneys for Plaintiff and the Class*

1133470.5